IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 11-cv-01789-WYD-KLM

BUYERS OF RITZ-CARLTON VAIL, LLC, a New Jersey limited liability company,

    Plaintiff,

v.

RCR VAIL, LLC, a Colorado limited liability company;
MATT FITZGERALD, an individual residing in Colorado;
SLIFER, SMITH & FRAMPTON – VAIL ASSOCIATES REAL ESTATE, LLC, a
    Delaware limited liability company,

    Defendants.
_____

**ORDER**
_____

THIS MATTER is before the Court on Defendant Slifer Smith & Frampton's Fed. R. Civ. P. 12(c) Motion For Judgment On The Pleadings Because Of A Lack Of Standing [ECF No. 42] and Defendant RCR Vail, LLC's Motion For Partial Judgment On The Pleadings [ECF No. 45].

**BACKGROUND**

This suit arises out of a dispute regarding the accommodations of a condominium located in Vail, Colorado.

Elena Kardonsky and Julia Schlovsky ("the Members") are the sole members of the plaintiff, Buyers of Ritz Carlton Vail, LLC ("BRC"). In February 2008, the Members vacationed in Vail. While there, they visited the Ritz-Carlton Vail real estate project ("Vail Ritz") preview center located in Lionshead Village. Defendants, RCR Vail, LLC, and Slifer, Smith & Frampton - Vail Associates Real Estate, LLC ("Slifer"), were

- 1 -

responsible for developing, marketing, and selling the Vail Ritz.  RCR and Slifer marketed the Vail Ritz as part of "Ever Vail", a planned community west of Lionshead Village and located in the "core" of Vail, Colorado. ECF No. 14, p. 3, ¶ 9.  Defendant, Matt Fitzgerald, a real estate broker and Slifer employee, held a sales presentation for the Members while they visited the Vail Ritz preview center.  During the presentation, Fitzgerald represented to the Members that the Vail Ritz:  (1) was a Ritz-Carlton property; (2) was a "first class resort in Vail;" (3) included "all of the typical legendary amenities of a Ritz-Carlton;" (4) would be "located in a prime location without any drawbacks;" and, (5) "would have every modern convenience." ECF No. 14, p. 7, ¶ 21.  Fitzgerald also represented that the Vail Ritz would be located "adjacent to a 'new gondola that [would] be fully operational prior to the completion of the Vail Ritz.'" *Id.*

On March 27, 2008, the Members entered into an agreement with RCR to purchase Vail Ritz condominium unit 307 [ECF No. 14-5].  The Members tendered $680,992.50 to RCR as earnest money, which was later reduced to $578,843.63 by an amendment to the agreement executed on May 31, 2009.  Subsequent to entering into the agreement, the Members found out that the Vail Ritz was not a Ritz-Carlton Hotel or a Ritz-Carlton property.  Rather, the Vail Ritz was a condominium project *managed* by Ritz Carlton Management Company.  The Vail Ritz utilizes the Ritz-Carlton name and logo under a licensing agreement with the Ritz-Carlton Hotel Company, L.L.C.

Prior to closing on the agreement, the Members became aware that other parties who purchased Vail Ritz condominium units were involved in litigation regarding the purchase of their units and the units' accommodations.  The Members became concerned that the Vail Ritz units were not being constructed as represented by

Fitzgerald, RCR, and Slifer.  Specifically, the Members were concerned with whether the condominium units would include:  (1) on site food service; (2) spa services; (3) a "state of the art" media room; and, (4) ski in/ski out availability.  The Members were also concerned with whether the Vail Ritz could lose its "Ritz-Carlton" title on the whim of the Ritz-Carlton Management Company, LLC.  Due to these concerns, the Members demanded rescission of the agreement "due to the extensive and pervasive material misrepresentations and omissions . . . made by Defendants in regard to the Vail Ritz."  ECF No. 14, p. 10, ¶ 32.  The Members also demanded return of the $578,843.63 earnest money.  RCR refused.

On May 31, 2011, the Members assigned all claims they may have against the defendants to BRC [ECF No. 42-1].  The assignment states, in pertinent part:

> Assignors [the Members] desire to assign any and all claims for damages they may have against RCR Vail, Fitzgerald and SSF [Slifer, Smith & Frampton – Vail Associates Real Estate, LLC] related to the Purchase Agreement, including, but not limited to, claims for violations of the Interstate Land Sales Fair Disclosure Act ("ILSFDA"), violations of the Colorado Consumer Protection Act ("CCPA"), misrepresentation, omission, negligence, breach of Transaction-Broker duties, Respondeat Superior, unjust enrichment, fraudulent concealment and fraudulent misrepresentation . . .

ECF No. 42-1, p. 1, ¶ 5.  On November 22, 2011, BRC filed this suit against the defendants alleging 16 claims, including:  (1) violations of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701, *et seq.*; (2) violations of the Colorado Consumer Protection Act ("CCPA"), Colorado Revised Statues § 6-1-101, *et seq.*; (3) violations of a real estate broker's obligations pursuant to COLO. REV. STAT. § 12-61-807(2)(b)(IV); (4) negligent misrepresentation; (5) fraudulent concealment;

(6) fraudulent misrepresentation; (7) unjust enrichment; and, (8) a request for attorney fees.  The Members' claims center on the allegation that Fitzgerald, RCR, and Slifer failed to disclose the true nature of the Vail Ritz.  On May 25, 2012, Slifer filed a Motion for Judgment on the Pleadings [ECF No. 42], arguing that BRC lacks standing to bring this suit because Colorado law precludes a party from assigning "personal services" claims.  On June 20, 2012, RCR filed a Motion for Partial Judgment on the Pleadings [ECF No. 45], arguing that:  (1) the Members cannot assign their ILSFDA claims because the statute is silent on assignment and the statute is penal in nature; and, (2) BRC does not have a viable CCPA claim because the Members did not "purchase" any property from RCR and have not suffered an injury in fact.

## ANALYSIS

### A.  Legal Standard

The defendants filed Motions for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(c).  "A motion for judgment on the pleading under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  Thus, I will analyze the defendants' motions under the framework of a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6).

FED. R. CIV. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201

(10th Cir. 2003) (citations and quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2007).

In ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I "must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff."  *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997)(citations omitted).  The plaintiff "must include enough facts to 'nudge[] [his] claims across the line from conceivable to plausible.'"  *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory allegations are not sufficient to survive a motion to dismiss.  *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009); *see also Twombly*, 550 U.S. at 546 (2007) (The plaintiff's burden "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  General allegations "encompass[ing] a wide swath of conduct, much of it innocent" will fail to state a claim.  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

## B. Slifer's Motion for Judgment on the Pleadings [ECF No. 42]

Slifer argues that BRC lacks standing to bring this suit because Colorado law precludes assignment of personal service claims.

"Colorado generally favors the assignment of rights pursuant to a valid contractual arrangement."  *Brown v. Gray*, 227 F.3d 1278, 1294 (10th Cir. 2000) (citation omitted).  "Causes of action which survive the death of the party entitled to sue may

ordinarily be assigned, *see Olmstead v. Allstate Ins. Co.*, 320 F. Supp. 1076, 1077 (D. Colo. 1971) (applying Colorado law), and under Colorado law all causes of action survive death except slander and libel, *see* Colo. Rev. Stat. § 13-20-101 (1987)." *Id.* "The only assignments Colorado does not allow are for claims involving matters of personal trust or confidence or for personal services." *Id.*

In *Scott v. Fox Bros. Enters., Inc.*, 667 P.2d 773, 774 (Colo. Ct. App. 1983), the Colorado Court of Appeals succinctly described the factual circumstances required for services to be characterized as "personal." The issue in *Scott* was whether a receipt and option contract for the sale of real property was "personal in nature and, therefore, unassignable." 667 P.2d at 774. In holding that the contract was not personal in nature, and therefore assignable, the Court stated:

> The presumption [that contractual rights are assignable] may be overcome only if it can be shown that the optioner would not have granted it *but for his reliance upon the personal integrity, credit, or responsibility of the original optionee*. If that be shown to be the case, then the optionor has acted with that degree of trust and confidence which is *singularly personal* to the optionee/obligor, and the option is personal in nature and not assignable.

*Id.* (emphasis added). Here, like in *Scott*, there are no facts that support the conclusion that Fitzgerald would not have entered into the agreement and performed brokering services to the Members "but for his reliance upon the person integrity, credit, or responsibility of [the Members]." *Id.* When analyzed from the Members' perspective, while the Members may have relied on Fitzgerald's representations about the Vail Ritz, they do not allege that their reliance was based on Fitzgerald's personal integrity, credit, or responsibility. The Members do not allege that they specifically targeted Fitzgerald and sought out his services due to his reputation or ability to broker real estate

transactions. Neither the Members nor Fitzgerald acted "with [a] degree of trust and confidence which [was] singularly personal" to the other party. *Scott*, 667 P.2d at 774. Thus, Fitzgerald's services were not personal. Because Fitzgerald's services were not personal, any claim that arose out of the interaction between the Members and Fitzgerald is assignable. Therefore, Slifer's Motion for Judgment on the Pleadings [ECF No. 42] is DENIED.

## C. RCR's Motion for Judgment on the Pleadings [ECF No. 45]

RCR argues that: (1) BRC's ILSFDA claims should be dismissed because the statute does not allow assignees to bring claims under the act; and, (2) BRC's CCPA claims should be dismissed because the Members did not purchase any property from RCR and did not suffer an injury in fact.

### 1. BRC's ILSFDA Claims

In 1968, Congress enacted the ILSFDA. "The statute is 'designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers.'" *Tencza v. Tag Court Square*, 803 F. Supp. 2d 279, 282 (S.D. N.Y. 8/16/11) (quoting *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 778 (1976)). "To that end, the statute imposes various requirements on parties who sell land via instrumentalities of interstate commerce." *Id.* BRC alleges that the defendants violated the following ILSFDA provisions:

> (a) Prohibited activities. It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails--
>
> > (1) with respect to the sale or lease of any lot not

>>exempt under section 1403 [15 USCS § 1702]--
>
>>\* \* \* \*
>
>>(B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1408 [15 USCS § 1707], has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee;
>
>>\* \* \* \*
>
>>(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1403(a) [15 USCS § 1702(a)]--
>
>>\* \* \* \*
>
>>(B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;
>
>>\* \* \* \*
>
>>(D) to represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.

15 U.S.C. §§ 1703(a)(1)(B), (a)(2)(B), & (a)(2)(D).

Under the ILSFDA, "[a] *purchaser or lessee* may bring an action at law or in equity against the sellor or lessor (or successor thereof) to enforce any right under subsection (b), (c), (d), or (e) of section 1404 [15 USCS § 1703(b), (c), (d), or (e)]." 15

U.S.C. § 1709(b) (emphasis added).  Thus, the ILSFDA's plain language provides a cause of action only to purchasers and lessees.  RCR argues that BRC, as an assignee, is not in the class of plaintiffs permitted to bring suit under the ILSFDA.

BRC argues that it is a proper plaintiff under the ILSFDA, even though it is an assignee.  BRC relies on *Trotta v. Lighthouse Point Land Co.*, LLC, 551 F. Supp. 2d 1359 (S.D. Fla. 2/13/08).  In *Trotta*, the plaintiff filed suit under the ILSFDA and the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201, et seq., after purchasing a beach-front condominium from the defendant.  C & G Enterprises, LLC ("C & G"), entered into the agreement with the defendant to purchase the condominium.  C & G then assigned the contract to the plaintiff.  The plaintiff and his wife created C & G and "counsel acknowledged at oral argument, C & G Enterprises, LLC was essentially nothing but the alter ego of plaintiff and his then-wife (the 'C' and 'G' stood for 'Cathy' and 'Glen')." 551 F. Supp. 2d at 1366.  The defendant argued that the plaintiff, as an assignee, was precluded from bringing suit under the statute because he did not directly purchase the condominium from the defendant and therefore was not a purchaser.  In holding that the plaintiff had standing to bring suit, the Court stated that, "[b]ut here, the assignee (plaintiff) did deal with the seller as the original buyer, albeit through a limited-liability company rather than as an individual.  Under these circumstances, the court finds that plaintiff does have standing to pursue his ILSA claim against defendants." *Id.*  BRC state that *Trotta* is similar to the present case.  BRC argues that it is the "alter ego" of the Members and therefore, as in *Trotta*, BRC dealt directly with the defendant, albeit through the Members.  Thus, BRC argues that I should adopt the rationale from *Trotta* and find that it is a purchaser and has standing to

bring its claims under the ILSFDA. I agree.

The task before me is to "interpret the words of th[e] statut[e] in light of the purposes Congress sought to serve." *FAA v. Cooper*, 132 S. Ct. 1441, 1462 (2011) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979)). As previously stated, the ILSFDA's purpose is to "prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." *Tencza*, 803 F. Supp. 2d at 282 (quoting *Flint Ridge Dev. Co.*, 426 U.S. at 778). The ILSFDA's plain language clearly defines the two classes of plaintiffs that Congress sought to protect: purchasers and lessees. 15 U.S.C. § 1709(b). The Members entered into an agreement to buy the condominium unit with RCR on March 27, 2008. On May 31, 2011, the Members assigned all claims it had against the defendants to BRC [ECF No. 42-1]. The Members, Elena Kardonsky and Julia Schlovsky, comprise the entirety of BRC's membership. Thus, the same people who entered into the agreement to buy the Vail Ritz condominium unit are the same people who bring this suit: they just bring this suit under the auspices of a limited liability company *i.e.*, BRC. To hold that Congress did not intend for an entity such as BRC to qualify as a purchaser under this set of circumstances would be counterintuitive and rigidly formalistic. Thus, I find that under this specific set of factual circumstances, BRC qualifies as a purchaser under 15 U.S.C. § 1709(b) and has standing to bring this suit. This holding is limited in scope to the facts of this case and does not stand for a general proposition that assignees have standing to sue under the ILSFDA. Accordingly, RCR's Motion for Judgment on the Pleadings [ECF No. 45] with respect to BRC's ILSFDA claims is DENIED.

### 2. BRC's CCPA Claims

"The CCPA was enacted to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public." *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146 (Colo. 2003) (citations omitted). "The CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." *Id.* (citations omitted). The CCPA states, in pertinent part:

> (1) The provisions of this article shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article. *An action under this section shall be available to any person who*:
>
> > (a) Is an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice, or is a residential subscriber, as defined in section 6-1-903 (9), who receives unlawful telephone solicitation, as defined in section 6-1-903 (10); or
> >
> > (b) Is any successor in interest to an actual consumer who purchased the defendant's goods, services, or property; or
> >
> > (c) In the course of the person's business or occupation, is injured as a result of such deceptive trade practice.

COLO. REV. STAT. § 6-1-113 (emphasis added). RCR argues that the Members' assignment of CCPA claims is invalid and BCR lacks standing to sue under the CCPA because neither the Members nor BRC actually purchased the Vail Ritz Condominium unit and because BRC has not suffered injury.

- 11 -

BRC is not an "actual consumer" under COLO. REV. STAT. § 6-1-113(1)(a) because BRC did not "purchase" any property from RCR. The contract between the Members and RCR is *contract to sell* rather than a *contract of sale*. Pursuant to section 1.1 of the agreement, "[s]ubject to and in accordance with the terms and conditions of this Agreement, *Seller* [RCR] *agrees to sell and Purchaser* [the Members] *agree*[] *to buy* the 'Unit' (as defined in Section 1.2) in the 'Project' (as defined in Section 3.1)." Thus, the plain language of the agreement contemplates that the seller will sell, and the buyer will buy, *at a later date i.e.*, the closing. Other key provisions of the agreement evidence that the agreement was only a contract to sell. Section 9.2.1. states:

> Seller will deliver or cause to be delivered to Purchaser an executed and acknowledged special warranty deed (the "Deed"), in the form of the attached Exhibit F, conveying title to the Unit subject only to the Permitted Exceptions. Purchaser will accept the Deed by executing the acceptance statement attached to the Deed *at Closing*.

ECF No. 14-5, p. 12, ¶ 4 (emphasis added). Section 9.2.2 states:

> Seller will deliver or cause to be delivered to Purchaser an executed bill of sale, in the form attached to this Agreement as Exhibit G, conveying title to the Personal Property. Purchaser will agree to the terms of the Bill of Sale by executing the acceptance statement attached to the Bill of Sale *at Closing*.

*Id.* at ¶ 5 (emphasis added). Most notably, Section 14 states, in pertinent part, "[s]ubject to the provisions of Section 9.1.2.2 relating to a Purchaser's Delay, Purchaser will be entitled to enter into possession of the Unit *at any time after Closing*." *Id.* at p. 15, ¶ 5 (emphasis added). Thus, the agreement's provisions contemplate that the deed transferring title to the unit and the actual contract of sale would not be executed until the closing. Therefore, the Members did not "purchase" the unit by executing the

agreement and they therefore cannot be characterized as "actual consumers" under COLO. REV. STAT. § 6-1-113(1)(a).

However, because of the unique set of facts, I find that BRC is a "potential consumer" under COLO. REV. STAT. § 6-1-113(1)(a). As I previously stated, the same people who entered into an agreement to buy the Vail Ritz condominium unit are the same people who bring this suit: they just bring this suit under the auspices of a limited liability company *i.e.*, BRC. Though the Members did not actually purchase the condominium unit, they qualify as potential consumers because they entered into an agreement to buy the condominium unit and took steps to enter into a contract of sale at a later date. Also, BRC/the Members suffered injury: the tendering of $578,843.63 earnest money to RCR. Thus, I find that BRC is a "potential consumer" under COLO. REV. STAT. § 6-1-113(1)(a) and has standing to bring its CCPA claims. Therefore, RCR's Motion for Judgment on the Pleadings regarding BRC's CCPA claims is DENIED.

## CONCLUSION

After careful consideration of the matters before this Court, it is

ORDERED that Slifer's Motion for Judgment on the Pleadings [ECF No. 42] is **DENIED**. It is

FURTHER ORDERED that RCR's Motion for Judgment on the Pleadings [ECF No. 45] is **DENIED**.

- 14 -

Dated: February 6, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge

- 14 -

Case 1:11-cv-01789-WYD-KLM   Document 80   Filed 02/06/13   USDC Colorado   Page 14 of 14

Dated: February 6, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge

- 14 -